**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 95-50109

CLEVLAND HICKS, JR.,

Plaintiff-Appellant,

versus

JACK M. GARNER, ETC.

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas

November 3, 1995

Before REAVLEY, JOLLY, and WIENER, Circuit Judges:

WIENER, Circuit Judge:

Plaintiff-Appellant Clevland Hicks, Jr., a prisoner proceeding pro se and in forma pauperis (IFP), filed this civil rights suit under 42 U.S.C. § 1983 against Defendants-Appellees Texas prison officials, alleging that the prison's grooming regulations interfered with the free exercise of his religion in violation of both the First Amendment and the Religious Freedom Restoration Act

(RFRA).[1]  The district court dismissed his complaint as frivolous under 28 U.S.C. § 1915(d).  The sole issue before us is whether the district court abused its discretion in holding both of these claims frivolous.  As we agree that Hicks' First Amendment claim was frivolous, we affirm in part; however, as we disagree that his RFRA claim was frivolous, we reverse and remand in part.

I

FACTS AND PROCEEDINGS

Hicks, who is currently incarcerated in the Administrative Segregation (AS) Section of the Alfred D. Hughes Unit, a maximum security prison within the Texas Department of Criminal Justice-Institutional Division (TDCJ-ID), professes the Rastafari religion. Based on the Biblical vow of the Nazarite, Rastafari practices include, inter alia, never cutting or combing one's hair, instead allowing it to grow in dreadlocks.[2]  Diametrically opposed to that tenet of the Rastafari religion is the aspect of the TDCJ-ID grooming regulations that prohibits long hair and beards.

Hicks filed this suit alleging that the prison's grooming regulations interfered with the free exercise of his religion, in

---

[1] 42 U.S.C. §§ 2000bb-2000bb-4

[2] Numbers 6:6-1.  Verse five of that vow reads:

All the days of the vow of his separation there shall no razor come upon his head: until the days be fulfilled, in the which he separateth himself unto the Lord, he shall be holy, and shall let the locks of the hair of his head grow.

See Scott v. Mississippi Dep't of Corrections, 961 F.2d 77 (5th Cir. 1992).

2

violation of the First Amendment and the RFRA. Hicks concedes, in his complaint, that as a general proposition his religious practices facially conflict with penological interests, such as prison security and ready ease of inmate identification. He contends that an exception should be made in his case, however, arguing that his confinement in AS and his segregation from the general prison population so significantly reduce the importance of these penological interests that they serve no valid purpose. Adding that he has no desire to return to the general prison population, Hicks concludes that, in his unique confinement situation, forcing him to comply with the grooming regulations both interferes with his religious beliefs and serves no actual penological interests.

In essence, Hicks asserts that because he is in special confinement, the penological interests of safety and identification do not apply to him, and that without these penological interests, the grooming requirements fail to pass muster under either the Constitution or the RFRA. By way of relief, he seeks an injunction that would prohibit prison officials from enforcing the grooming regulations against him and would permit him to keep a "large flexible plastic comb" in his cell for grooming.

This matter was referred to a magistrate judge who recommended that the complaint be dismissed as frivolous pursuant to 28 U.S.C. 1915(d). Hicks filed objections, requiring the district court to review his complaint de novo. After considering the record, the magistrate judge's recommendations, and the objections raised by

3

Hicks, the district court adopted the magistrate judge's recommendations, dismissing Hicks' complaint as frivolous and revoking his IFP status.[3]  Hicks timely appealed.

## II

## ANALYSIS

A.  STANDARD OF REVIEW

An IFP petition under 28 U.S.C. § 1915(d) may be dismissed if the district court is "satisfied that the action is frivolous or malicious."  We review a district court's section 1915(d) dismissal under the abuse-of-discretion standard.[4]

B.  THE DEFINITION OF FRIVOLOUS

Prior to the Supreme Court teachings in Neitzke v. Williams[5] and Denton v. Hernandez,[6] we held in Cay v. Estelle[7] that "[a]n IFP proceeding may be dismissed if (1) the claim's realistic chance of ultimate success is slight;  (2) the claim has no arguable basis in law or fact;  or (3) it is clear that the plaintiff can prove no set of facts in support of his claim."  Thereafter, however, we determined that Neitzke invalidated Cay's third prong[8] and that

_____

[3] We reinstated Hicks' IFP status for the purposes of this appeal.

[4] Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992); Mackey v. Dickson, 47 F.3d 744, 745-46 (5th Cir. 1995).

[5] 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

[6] 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992).

[7] 789 F.2d 318, 326 (5th Cir. 1986).

[8] Pugh v. Parish of St. Tammany, 875 F.2d 436 (5th Cir. 1989) (citing Neitzke for proposition that complaint which fails to state

4

<u>Denton</u>, invalidated its first prong.[9]  There is no question, however, regarding the continued validity of <u>Cay</u>'s second prong.[10] In both <u>Neitzke</u> and <u>Denton</u>, the Court held that a complaint "is frivolous where it lacks an arguable basis either in law or in fact."[11]

A court may dismiss a claim as factually frivolous only if the facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'"[12]  As Hicks' <u>factual</u> assertions obviously do not fall within this category, we must review Hicks' <u>legal</u> arguments to determine whether they have "an arguable basis in law."[13]  We initially examine his First Amendment claim and then his RFRA claim.

C.   FIRST AMENDMENT

The rule is well established that inmates retain their First Amendment right to exercise religion;[14] however, this right is subject to reasonable restrictions and limitations necessitated by

---

claim for purposes of Fed.R.Civ.P. 12(b)(6) is not automatically frivolous within meaning of section 1915(d)).

[9] <u>Booker v. Koonce</u>, 2 F.3d 114, 115 (5th Cir. 1993).

[10] <u>Id.</u> at 115 n.6.

[11] <u>Neitzke</u>, 490 U.S. at 325, 109 S.Ct. at 1831-32; <u>Denton</u>, 504 U.S. at 28, 112 S.Ct. at 1733; <u>see</u> <u>also</u>, <u>Booker</u>, 2 F.3d at 115-16.

[12] <u>Denton</u>, 504 U.S. at 33-34, 112 S.Ct. at 1733.

[13] <u>Neitzke</u>, 490 U.S. at 325, 109 S.Ct. at 1831-32; <u>Denton</u>, 504 U.S. at 28, 112 S.Ct. at 1733; <u>see</u> <u>also</u>, <u>Booker</u>, 2 F.3d at 115-16.

[14] <u>Powell v. Estelle</u>, 959 F.2d 22 (5th Cir. 1992)(per curiam), <u>cert. denied sub nom.</u>, <u>Harrison v. McKaskle</u>, __ U.S. __, 113 S.Ct. 668, 121 L.Ed.2d 592 (1992).

penological goals.[15] Equally clear in this circuit is the proposition that prison grooming regulations, including specifically the requirement that a prisoner cut his hair and beard, are rationally related to the achievement of valid penological goals, such as security and inmate identification.[16] Hicks does nothing to distinguish his case from the long line of cases that establish this precedent. Regardless of whether Hicks is in the general prison population or in AS, the penological goals behind the grooming requirements remain. Thus, Hicks has failed to identify "an arguable basis in law" for his free exercise claim; it is based on an indisputably meritless legal theory.[17] Accordingly, we hold that the district court did not abuse its discretion in dismissing Hicks' First Amendment claim.

D. THE RFRA

On the other hand, we conclude that the district court did abuse its discretion by dismissing Hicks' claim under the RFRA. Passed by Congress in 1993, the RFRA states in pertinent part:

> **§ 2000bb-1. Free exercise of religion protected**
> **(a) In general.** Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).

---

[15] Id. (citing Turner v. Safley, 482 U.S. 817, 822-23, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974)).

[16] See Powell, 959 F.2d at 25 (holding that the TDJC's prohibition on long hair and beards is rationally related to legitimate state objectives); Scott v. Mississippi Dep't of Corrections, 961 F.2d 77 (1992)(hair-grooming regulations that required short hair was reasonably related to legitimate penological concerns of identification and security).

[17] See Neitzke, 490 U.S. at 327, 109 S.Ct. at 1832.

> **(b) Exception.** Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person--
>> (1) is in furtherance of a compelling governmental interest; and
>> (2) is the least restrictive means of furthering that compelling governmental interest. The purpose of the RFRA is "to restore the compelling interest test ... in all cases where free exercise of religion is substantially burdened."[18]

Given this broad statement of purpose, we join every other circuit that has addressed this issue in concluding that the RFRA clearly applies to prisoners' claims.[19] Thus the issue whether the prison violated Hicks' religious rights under RFRA must be analyzed using the "substantial burden" test rather than the less stringent "reasonable opportunity" test previously employed.[20]

We cannot see how the district court could have validly concluded that Hicks' claim under the RFRA lacks "an arguable basis in law." Not passed until late in 1993, RFRA remains relatively

---

[18] 42 U.S.C. s 2000bb(b)(1).

[19] Bryant v. Gomez, 46 F.3d 948, 948 (9th Cir. 1995)(per curiam); Brown-El v. Harris, 26 F.3d 68, 69 (8th Cir. 1994); Werner v. McCotter, 49 F.3d 1476 (10th Cir. 1995), cert. denied, __ U.S. __, 115 S.Ct. 2625, __ L.Ed.2d __. These holdings are based on the fact that Congress debated and rejected an amendment that would have excluded prisons from the RFRA. See S.Rep. No. 111, 103rd Cong., 1st Sess. §§ V(d) and XI (1993); H.R.Rep. No. 88, 103rd Cong., 1st Sess. (1993).

[20] Under the latter test, an inmate who adheres to a minority religion must be given a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to the conventional religious precepts." Cruz v. Beto, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972). Nevertheless, the religious needs of the inmate must be balanced against the reasonable penological goals of the prison. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987).

new law; its statutory contours are vague and its legal limits, contours, and standards have yet to be defined.[21] More importantly, we have yet to address the RFRA or any of its discrete standards.

_____

[21] For example, "[t]he threshold inquiry under RFRA is whether the statute [or conduct] in question substantially burdens a person's religious practice. If there is no substantial burden, RFRA does not apply." Morris v. Midway Southern Baptist Church, 183 B.R. 239, 251 (D.Kan. 1995). A "substantial burden" has been defined in several different ways:

> The religious adherent . . . has the obligation to prove that a governmental [action] burdens the adherent's practice of his or her religion . . . by preventing him or her from engaging in conduct or having a religious experience which the faith mandates. This interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine. Bryant v. Gomez, 46 F.3d 948, 949 (9th Cir.1995); see also, Morris, 183 B.R. at 251;

> To exceed the "substantial burden" threshold, government regulation must significantly inhibit or constrain conduct or expression that manifests some central tenet of a prisoner's individual beliefs, . . .; must meaningfully curtail a prisoner's ability to express adherence to his or her faith; or must deny a prisoner reasonable opportunities to engage in those activities that are fundamental to a prisoner's religion. Werner, 49 F.3d at 1480 (citations omitted);

> To be a "substantial burden", the government must either compel a person do something in contravention of their religious beliefs or require them to refrain from doing something required by their religious beliefs. Morris, 183 B.R. at 251;

> A "substantial burden" has been defined as follows: "where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. Woods v. Evatt, 876 F.Supp. 756, 762 (D.S.C. 1995) (citations omitted).

Although either a motion for summary judgment or the further development of case law in this circuit may ultimately defeat Hicks' RFRA claim, we hold that, at this early stage in the development of RFRA, Hicks' has a "fightin' chance" to make some of that the law. Accordingly, the district court abused its discretion when it summarily dismissed Hicks' RFRA claim as frivolous. We therefore vacate the district court's ruling on Hicks' RFRA claim and remand it for further adjudication consistent with this opinion. To facilitate future appellate review, the district court should on remand explain its analysis in some detail.

III

CONCLUSIONS

For the foregoing reasons, we affirm the district court's dismissal of Hicks' First Amendment claim, but vacate and remand his claim under RFRA for further proceedings consistent with this opinion.

AFFIRMED in part, and VACATED and REMANDED in part.