Fredrick GOODEN, # 1013573
A.K.A. Ma'Min Al–Naba

v.

C. CRAIN, et al.

No. CIV.A.6:04CV127.

United States District Court,
E.D. Texas,
Tyler Division.

Oct. 5, 2005.

Frederick Gooden, Tennessee Colony, Pro se, for Plaintiff.

Marjolyn Carol Gardner, Attorney General's Office, Charles Kenneth Eldred, of Barney, Knight & Associates, Charles Kenneth Eldred, of Barney, Knight & Associates, Austin, for Defendants: C. Crain D. Dretke, Billy Pierce TX Board of Criminal Justice.

## MEMORANDUM OPINION AND ORDER

GUTHRIE, United States Magistrate Judge.

Plaintiff Fredrick Gooden a.k.a. Ma'min al-Naba, an inmate confined at the Coffield Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this lawsuit pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 2000cc. The case was transferred to the undersigned pursuant to 28 U.S.C. § 636(c). The present Opinion addresses the Defendants' motion to dismiss (docket entry numbers 38 and 54), which is a challenge to the constitutionality of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). The Opinion also addresses the United States' motion to intervene (docket entry # 74) to defend the constitutionality of RLUIPA.

### History of the Case

The complaint was filed on March 15, 2004. The Plaintiff, a Muslim inmate, alleged that he should be permitted to grow a 1/4 inch beard in accordance with his religious beliefs. On June 30, 2004, the Court conducted an evidentiary hearing, consistent with *Spears v. McCotter*, 766 F.2d 179, 182 (5th Cir.1985), wherein the Plaintiff's claims were considered. The Plaintiff argued that denying him the right to grow a 1/4 inch beard for religious reasons while allowing other inmates to grow 1/4 inch beards for medical

reasons violates his rights under the Equal Protection Clause. He also argued that he should be permitted to grow a 1/4 inch beard under RLUIPA. He sued the Texas Board of Criminal Justice Chairman C. Crain, the Texas Board of Criminal Justice, TDCJ Director D. Dretke and Director of Chaplaincy B. Pierce. The Defendants were ordered to answer. On August 19, 2004, the Texas Board of Criminal Justice's motion to dismiss was granted.

On October 21, 2004, the case was administratively closed while the Supreme Court considered the constitutionality of RLUIPA in *Cutter v. Wilkinson,* —— U.S. ——, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). On May 31, 2005, the Supreme Court unanimously upheld the statute and concluded that it did not violate the Establishment Clause.

The present case was returned to the active docket in light of the decision in *Cutter.* The Defendants have filed a motion to dismiss (docket entry numbers 38 and 54). Their arguments will be addressed *seriatim.*

### Discussion and Analysis

[1, 2] The Religion Clauses of the First Amendment provide: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." "The first of these two Clauses, commonly called the Establishment Clause, commands a separation of church and state. The second, the Free Exercise Clause, requires government respect for, and noninterference with, the religious beliefs and practices of our Nations's people. While the two Clauses express complementary values, they often exert conflicting pressures." *Cutter,* 125 S.Ct. at 2120.

[3] The Supreme Court has made it clear that the Free Exercise Clause affords prisoners "reasonable opportunities" to exercise their religious beliefs. *Cruz v.*

*Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972)(*per curiam*). The Court recognized, however, that limits may be placed on the religious rights that must be afforded to inmates:

> We do not suggest, of course, that every religious sect or group within a prison—however few in number—must have identical facilities or personnel. A special chapel or place of worship need not be provided every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to extent of the demand.

405 U.S. at 322, n. 2, 92 S.Ct. 1079. Ever since *Cruz v. Beto* was decided, courts have weighed the competing interests of the Free Exercise Clause and the security needs of prisons in evaluating religious claims brought by inmates.

The Fifth Circuit has routinely weighed these competing interests in evaluating claims brought by inmates confined in the Texas prison system who desired to grow beards in accordance with their religious beliefs. In *Hill v. Estelle,* 537 F.2d 214, 215 (5th Cir.1976), the Fifth Circuit reiterated the long standing principle that "lawful incarceration results in the necessary limitation of many privileges and rights of the ordinary citizen." The Court held that haircut and shaving regulations did not violate inmates' free exercise of religion, freedom of expression or due process of law. *Id.* The regulations promoted cleanliness and personal identification. *Id.* The Fifth Circuit added that it "had not yet reached a point where Federal Courts should second-guess state prison officials on the length of prisoners' hair." *Id.*

In *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), the Supreme Court repeated the long standing principle that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights,"

and "[w]hen a prison regulation impinges upon the inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89, 107 S.Ct. 2254. The Supreme Court identified four factors that should be considered in determining the reasonableness of a regulation: (1) there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) are there alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation will have on guards and other inmates, and on the allocation of prison resources generally; and (4) the absence of alternatives is evidence of the reasonableness of a prison regulation. *Id.* 89–91, 107 S.Ct. 2254. Shortly after the *Turner* decision, the Supreme Court applied the test to uphold a prison policy that prevented inmates from attending Islamic prayer services. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

After the announcement of the decisions in *Turner* and *O'Lone,* the Fifth Circuit revisited the issue of whether the Texas prison system's grooming regulations violated the Free Exercise Clause in *Powell v. Estelle,* 959 F.2d 22 (5th Cir.1992), *cert. denied,* 506 U.S. 1025, 113 S.Ct. 668, 121 L.Ed.2d 592 (1992). The Fifth Circuit held that the regulation requiring short hair and no beards was rationally related to the legitimate security goal of preventing the concealment of weapons and contraband in hair and beards. *Id.* at 25. It was also rationally related to the legitimate security goal of identifying prisoners during their stay in prison and after an escape. *Id.* The Fifth Circuit also found that long hair and beards would have an adverse impact on the safety of prisoners working around industrial equipment and the hygiene of the prison population as a whole. *Id.* The Fifth Circuit upheld this Court's decision that the prison system's prohibition on long hair and beards is rationally related to legitimate state objectives. *Id.* at 26.

In *Hicks v. Garner,* 69 F.3d 22 (5th Cir.1995), the Fifth Circuit upheld the dismissal of a Rastafarian inmate's Free Exercise Clause challenge to the grooming regulations as frivolous. The Fifth Circuit found that a free exercise challenge to the grooming regulations was "based on an indisputably meritless legal theory." *Id.* at 25. More recently, the Fifth Circuit upheld this Court's decision that the prison policy of prohibiting inmates from wearing beards, even quarter-inch beards, except for medical reasons did not violate the free exercise rights of Muslim inmates. *Green v. Polunsky,* 229 F.3d 486 (5th Cir.2000). The Fifth Circuit specifically left open the question whether there was an equal protection violation. *Id.* at 489 n. 6. In *Taylor v. Johnson,* 257 F.3d 470 (5th Cir.2001), the Fifth Circuit again held that the grooming policy did not violate the Free Exercise Clause. It is clear that any challenge to the prison system's grooming policy based on the Free Exercise Clause is frivolous.

Congress, on the other hand, has not always agreed with the judiciary's approach in handling religion cases. For our purposes, significant developments began with the Supreme Court's decision in *Employment Div., Dept. of Human Resources of Or. v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). The Supreme Court held that the Free Exercise Clause does not inhibit enforcement of otherwise valid laws of general application that incidentally burden religious conduct. *Id.* at 878–882, 110 S.Ct. 1595. The Supreme Court held that the Free Exercise Clause did not bar Oregon from enforcing its blanket ban on peyote possession with no allowance for sacramental use of the drug. Congress responded by passing the

Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb *et seq.*, and later the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc–1(a)(1)(2). RFRA prohibited governments from "substantially burdening" a person's exercise of religion even if the burden results from a rule of general applicability unless the government can demonstrate the burden (1) is in the furtherance of a compelling governmental interest; and (2) the least restrictive means of furthering that compelling governmental interest.

This Court reexamined the grooming regulations in light of RFRA. The results varied. In *Lewis v. Scott*, 910 F.Supp. 282 (E.D.Tex.1995), Judge Williams Wayne Justice held that the grooming policy violated RFRA to the extent that it prevented inmates from growing a quarter-inch beard. On the other hand, the undersigned found that the hair regulations did not violate RFRA. *Diaz v. Collins*, 872 F.Supp. 353 (E.D.Tex.1994). The Fifth Circuit affirmed the decision. *Diaz v. Collins*, 114 F.3d 69 (5th Cir.1997). The Fifth Circuit found that prison regulations on hair length are related to security and involves a compelling state interest. *Id.* at 73. The "security interest at stake cannot meaningfully be achieved appropriately by any different or lesser means than hair length standards." *Id.* The Fifth Circuit noted that Congress intended that the courts "continue to extend substantial deference to prison officials in legitimate security matters." *Id.* The Fifth Circuit found that the grooming regulations did not violate RFRA.

The Supreme Court examined RFRA in *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). The Supreme Court held that Congress exceeded its remedial powers under the Fourteenth Amendment by passing the law. *Id.* at 532–36, 117 S.Ct. 2157. RFRA was declared unconstitutional. It is noted that Judge Justice's decision in *Lewis v. Scott* was reversed after the Supreme Court found RFRA unconstitutional. *Lewis v. Scott*, 127 F.3d 33 (5th Cir.1997) (table).

Congress responded to the *City of Boerne* decision by passing RLUIPA, a scaled down version of RFRA. Section 3, at issue here, provides that no "government shall impose a substantial burden on the religious exercise of a person residing in or confined in an institution," unless the government shows that the burden furthers "a compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc–1(a)(1)–(2). Section 3 applies when "the substantial burden is imposed in a program or activity that receives Federal financial assistance."

The Supreme Court examined RLUIPA in *Cutter v. Wilkinson*, —— U.S. ——, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). The Supreme Court unanimously upheld the constitutionality of the statute. It was noted that Congress documented that "frivolous or arbitrary" barriers impeded institutionalized persons' religious exercise. *Id.* at 2119. Congress carried over from RFRA the "compelling governmental interest"/"least restrictive means" standard. *Id.* The Supreme Court noted that Congress anticipated that courts would still continue to accord "due deference to the experience and expertise of prison and jail administrators." *Id.* (citations omitted). The Supreme Court rejected the Ohio prison system's argument that RLUIPA violated the Establishment Clause. *Id.* at 2121. The Supreme Court found that RLUIPA is compatible with the Establishment Clause because it alleviates exceptional government-created burdens on private religious exercise. *Id.* Furthermore, RLUIPA did "not founder on shoals" of prior Supreme Court decisions. *Id.* The Supreme Court concluded that

RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Id.* at 2122. The Supreme Court added that it does not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety—it does not override other significant interests. *Id.* Finally, the Supreme Court noted that "[s]hould inmate requests for religious accommodations become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist imposition." *Id.* at 2125.

The undersigned recently reexamined the grooming regulations in the aftermath of *Cutter v. Wilkinson* in *Thunderhorse v. Pierce*, No. 9:04cv222, 2005 WL 1398644 (E.D.Tex. June 10, 2005). It was noted that the Supreme Court specified that RLUIPA "carried over" the applicable standard from RFRA. It was further noted that the Fifth Circuit upheld the grooming standards in *Diaz v. Collins, supra.* As such, there was not a "significant" likelihood of success to a challenge to the grooming standards under RLUIPA warranting injunctive relief.

This brings us to the Defendants' motion to dismiss. The Defendants acknowledged that the Texas prison system receives federal funds, albeit limited, that represent approximately 1.25% of the $2.5 billion operating budget. They pointed out that Justice Thomas' concurring opinion in *Cutter* noted that "though RLUIPA is entirely consonant with the Establishment Clause, it may well exceed Congress' authority under either the Spending Clause or the Commerce Clause." 125 S.Ct. at 2125 n. 2. The Defendants argued that RLUIPA does, in fact, exceeds Congress' authority

under both the Commerce and Spending Clauses. They also argued that RLUIPA runs afoul of the Tenth Amendment limits on Congress' power.

The arguments raised by the Defendants were mentioned in the majority opinion in *Cutter.* The Supreme Court compared RFRA to RLUIPA and noted that RFRA was universal in coverage and that it notably lacked a Commerce Clause underpinning or a Spending Clause limitation to recipients. 125 S.Ct. at 2118. By comparison, RLUIPA is limited in scope, and Congress invoked federal authority under the Spending and Commerce Clauses. *Id.* With respect to the type of arguments that the Defendants have raised in the present case, the Supreme Court held that the arguments were not addressed by the appellate court in *Cutter,* therefore it would not consider them. *Id.* at 2120 n. 7.

The Fifth Circuit issued a similar ruling in *Adkins v. Kaspar,* 393 F.3d 559, 570 n. 52 (5th Cir.2004). The Fifth Circuit noted that it was not ruling on the constitutionality of RLUIPA since it was not asked to do so. *Id.* The Fifth Circuit cited numerous cases from various other circuits, all of which upheld the constitutionality of RLUIPA, except for the Sixth Circuit in *Cutter.* It is again noted that the Sixth Circuit's decision in *Cutter* was reversed by the Supreme Court. Thus there is no federal appellate court authority supporting the Defendants' motion to dismiss.

■ Every circuit that has considered challenges to RLUIPA based on the Spending Clause has upheld the constitutionality of the statute. *See Benning v. Georgia,* 391 F.3d 1299 (11th Cir.2004); *Charles v. Verhagen,* 348 F.3d 601 (7th Cir.2003); *Mayweathers v. Newland,* 314 F.3d 1062 (9th Cir.2002). The Eleventh Circuit, the Fifth Circuit's sister circuit, noted in *Benning* that Congress may attach conditions on the receipt of federal

funds. *Id.* at 1305. *See South Dakota v. Dole,* 483 U.S. 203, 206, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987). This power may be exercised to achieve goals not within the other enumerated powers of Congress in Article I, but the power is also limited. *Id.* The Eleventh Circuit reviewed the restrictions on the spending power and found that RLUIPA satisfied the restrictions. *Id.* at 1305–07. It was noted that Congress clearly and unambiguously placed states on notice that by accepting federal funds they waived their immunity from suit under RLUIPA. *Id.* at 1306. It further noted that no "federal appellate court has held to the contrary, and we decline to be the first." *Id.* at 1307. The Defendants were unable to cite any federal appellate authority supporting their Spending Clause defense, and they were unable to do so because there is none. The Court is in agreement with the Eleventh Circuit and is of the opinion that the argument lacks merit.

█ The Defendants also argued that RLUIPA runs afoul of the Tenth Amendment's limits on Congress' power. The Eleventh Circuit in *Benning* dealt with this argument and held that since RLUIPA is within an enumerated power of Congress, the Tenth Amendment does not apply. *Id.* at 1308. The Eleventh Circuit noted that "RLUIPA's core policy is not to regulate the states or compel their enforcement of a federal regulatory program, but to protect the exercise of religion, a valid exercise of [the power of Congress], which does not run afoul of the Tenth Amendment's protection of the principles of federalism." *Id.* at 1309. RLUIPA does not compel the states to regulate in a specific manner and it is a valid exercise of a power of Congress, thus RLUIPA does not violate the Tenth Amendment. *Id.* The Defendants have not cited any federal appellate authority supporting their claim that RLUIPA violates the Tenth Amendment, and this Court is in agreement with

the reasoning of the Eleventh Circuit. The Court is of the opinion that the Tenth Amendment argument lacks merit.

The Seventh Circuit fully discussed the Commerce Clause argument in *Charles v. Verhagen,* 348 F.3d 601 (7th Cir.2003). Like the Eleventh Circuit, the Seventh Circuit found that RLUIPA was valid under the Spending Clause. *Id.* at 609. In light of the finding that RLUIPA is valid under the Spending Clause, the Seventh Circuit held that there is no need to consider a challenge based on the Commerce Clause. *Id.* "Whether or not the Commerce Clause provides an independent *justification* for RLUIPA does not impact its constitutionality under the Spending Clause. Accordingly, the Commerce Clause could not provide an independent bar to the enactment of RLUIPA." *Id.* The Seventh Circuit also noted that when Congress engages in a constitutional use of its delegated Article I powers, then the Tenth Amendment does not reserve that power to the states. *Id.* RLUIPA was a valid use of the spending power, thus there was no Tenth Amendment violation. *Id.* Once again, the Defendants have not cited any federal appellate authority holding to the contrary. Their arguments in support of their claim that RLUIPA is unconstitutional lack merit.

The motion to dismiss should be denied. The United States' motion to intervene (docket entry # 74) to defend the constitutionality of RLUIPA is moot under the circumstances. At this juncture, the case should be set for a hearing to consider the merits of the Plaintiff's equal protection and RLUIPA claims. The hearing will be set as soon as the prison system has resolved post-hurricane problems and is once again in a position to start transporting inmates to court. It is accordingly

**ORDERED** that the motion to dismiss (docket entry numbers 38 and 54) is **DENIED**. It is further

**ORDERED** that the motion to intervene (docket entry # 74) is **DENIED** as moot.