Theresa Marie Schindler **SCHIAVO**, Incapacitated **ex rel., Robert SCHINDLER and Mary Schindler, her Parents and Next Friends, Plaintiffs,**

v.

**Michael SCHIAVO, Judge George W. Greer and The Hospice of the Florida Suncoast, Inc. Defendants.**

No. 8:05–CV–530–T–27TBM.

United States District Court,
M.D. Florida,
Tampa Division.

March 22, 2005.

David C. Gibbs, III, Gibbs Law Firm, Seminole, FL, George E. Tragos, Law Office of George E. Tragos, Clearwater, FL,

Robert A. Destro, Columbus School of Law, Washington, DC, for Plaintiffs.

George J. Felos, Felos & Felos, P.A., Dunedin, FL, Iris Bennett, Robert M. Portman, Thomas J. Perrelli, Jenner & Block LLC, Washington, DC, Randall C. Marshall, American Civil Liberties Union Foundation of Florida, Inc., Miami, FL, Rebecca H. Steele, ACLU Foundation of Florida, Inc. West Central Florida Office, Gail Golman Holtzman, John W. Campbell, Constangy, Brooks & Smith, LLC, Robin G. Midulla, Robin Greiwe Midulla, P.A., Tampa, FL, for Defendants.

### ORDER

WHITTEMORE, District Judge.

**BEFORE THE COURT** is Plaintiffs' Motion for Temporary Restraining Order (Dkt.2). In their motion, Plaintiffs seek an order directing Defendants Schiavo and Hospice to transport Theresa Schiavo to Morton Plant Hospital for any necessary medical treatment to sustain her life and to reestablish her nutrition and hydration. This action and Plaintiffs' motion were filed in response to an order of Pinellas County Probate Judge George W. Greer directing Defendant Schiavo, Theresa Schiavo's husband and plenary guardian, to discontinue her nutrition and hydration.

The court conducted a hearing on Plaintiffs' motion after notice to Defendants. Upon consideration, Plaintiffs' Motion for Temporary Restraining Order is denied.

Plaintiffs, the parents of Theresa Marie Schindler Schiavo, brought this action pursuant to a Congressional Act signed into law by the President during the early morning hours of March 21, 2005.[1] The Act, entitled "An Act for the relief of the parents of Theresa Marie Schiavo," provides that the:

United States District Court for the Middle District of Florida shall have jurisdiction to hear, determine, and render judgment on a suit or claim by or on behalf of Theresa Marie Schiavo for the alleged violation of any right of Theresa Marie Schiavo under the Constitution or laws of the United States relating to the withholding or withdrawal of food, fluids, or medical treatment necessary to sustain life.

### Jurisdiction and Standing

 The federal district courts are courts of limited jurisdiction, "empowered to hear only those cases ... which have been entrusted to them by a jurisdictional grant authorized by Congress." *University of S. Ala. v. American Tobacco Co.*, 168 F.3d 405, 409 (11th Cir.1999) (*quoting Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir.1994)). The plain language of the Act establishes jurisdiction in this court to determine *de novo* "any claim of a violation of any right of Theresa Schiavo within the scope of this Act." The Act expressly confers standing to Plaintiffs as her parents to bring any such claims. There can be no substantial question, therefore, that Plaintiffs may bring an action against a party to the state court proceedings in this court for claimed constitutional deprivations or violations of federal law occasioned on their daughter relating to the withholding or withdrawal of food, fluids, or medical treatment necessary to sustain her life. Whether the Plaintiffs may bring claims in federal court is not the issue confronting the court today, however. The issue confronting the court is whether temporary injunctive relief is warranted.

### Applicable Standards

 While there may be substantial issues concerning the constitutionality of the Act, for purposes of considering temporary injunctive relief, the Act is presumed to be

---

1. Pub.L. No. 109–3 (March 21, 2005).

constitutional. *Benning v. Georgia*, 391 F.3d 1299, 1303 (11th Cir.2004).

■■■ The purpose of a temporary restraining order, like a preliminary injunction, is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits. *Canal Auth. of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974). A district court may grant a preliminary injunction only if the moving party shows that:

> (1) it has a substantial likelihood of success on the merits;
>
> (2) irreparable injury will be suffered unless the injunction issues;
>
> (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and
>
> (4) if issued, the injunction would not be adverse to the public interest.

*Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir.2004); *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir.2001). A preliminary injunction is "an extraordinary and drastic remedy" and is "not to be granted unless the movant 'clearly established the burden of persuasion' as to the four prerequisites." *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir.1983) (*quoting Canal Auth. of State of Florida*, 489 F.2d at 573).[2]

■■■ It is apparent that Theresa Schiavo will die unless temporary injunctive relief is granted. This circumstance satisfies the requirement of irreparable injury. Moreover, that threatened injury outweighs any harm the proposed injunction would cause. To the extent Defendants urge that Theresa Schiavo would be harmed by the invasive procedure reinserting the feeding tube, this court finds that death outweighs any such harm. Finally, the court is satisfied that an injunction would not be adverse to the public interest. Notwithstanding these findings, it is essential that Plaintiffs establish a substantial likelihood of success on the merits, which the court finds they have not done.

■■■ The first of the four prerequisites to temporary injunctive relief is generally the most important. *Gonzalez v. Reno*, No. 00–11424–D, 2000 WL 381901 at *1 (11th Cir. April 19, 2000). The necessary level or degree of possibility of success on the merits will vary according to the court's assessment of the other factors. *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir.1981) (*citing with auth. Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977)).

■■■ A substantial likelihood of success on the merits requires a showing of only *likely* or probable, rather than *certain*, success. *Home Oil Company, Inc. v. Sam's East, Inc.*, 199 F.Supp.2d 1236, 1249 (M.D.Ala.2002) (emphasis in original); *see also Ruiz*, 650 F.2d at 565. "[W]here the 'balance of the equities weighs heavily in favor of granting the [injunction],' the movant need only show a 'substantial case on the merits.'" *Garcia–Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir.1986) (*citing Ruiz*, 650 F.2d at 565).

■■■ This court has carefully considered the Act and is mindful of Congress' intent that Plaintiffs have an opportunity to litigate any deprivation of Theresa Schiavo's federal rights. The Court is likewise mindful of Congress' directive

---

2. The Act does not address the traditional requirements for temporary injunctive relief. Accordingly, these standards control whether temporary injunctive relief is warranted, notwithstanding Congress' intent that the federal courts determine *de novo* the merits of Theresa Schiavo's claimed constitutional deprivations.

that a *de novo* determination be made "notwithstanding any prior State court determination." In resolving Plaintiffs' Motion for Temporary Restraining Order, however, the court is limited to a consideration of the constitutional and statutory deprivations alleged by Plaintiffs in their Complaint and motion. Because Plaintiffs urge due process violations are premised primarily on the procedures followed and orders entered by Judge Greer in his official capacity as the presiding judge in the dispute between Michael Schiavo and Plaintiffs, their Complaint necessarily requires a consideration of the procedural history of the state court case to determine whether there is a showing of any due process violations. On the face of these pleadings, Plaintiffs have asserted five constitutional and statutory claims. To obtain temporary injunctive relief, they must show a substantial likelihood of success on at least one claim.[3]

### A. Count I—Violation of Fourteenth Amendment Due Process Right to a Fair and Impartial Trial

 Plaintiffs allege in Count I that Theresa Schiavo's Fourteenth Amendment right to a fair and impartial trial was violated, contending that the presiding judge "became Terri's health care surrogate" and "also purported to act as an impartial trial judge in the same proceeding." (Dkt.1, ¶¶ 47–48). They allege that once he "became an advocate for Terri's death, it became impossible for Judge Greer to maintain his role as an impartial judge in order to review his own decision that Terri would want to die." (Dkt.1, ¶ 49). Finally, they allege that "Judge Greer's dual and simultaneous role as judge and health-care surrogate denied

Terri a fair and impartial trial." (Dkt 1, ¶ 50). These contentions are without merit.

Florida's statutory scheme, set forth in Chapter 765, contemplates a process for designation of a proxy in the absence of an executed advance directive and provides for judicial resolution of disputes arising concerning decisions made by the proxy. *See Fla. Stat.* § 765.401(1). Where a decision by the proxy is challenged by the patient's other family members, it is appropriate for the parties to seek "expedited judicial intervention." *Fla. Stat.* § 765.105. Applying this statutory scheme, the state court appointed Michael Schiavo, Theresa Schiavo's husband, as plenary guardian and proxy for Theresa. Thereafter, a dispute arose between Michael Schiavo and Plaintiffs concerning whether to continue Theresa on artificial life support, and Judge Greer, the presiding judge, was called upon to resolve that dispute.

Florida's statutory scheme contemplates a judicial resolution of these competing contentions. *See In re Guardianship of Browning,* 568 So.2d 4, 16 (Fla.1990). As the Florida Second District Court of Appeal explained, where two "suitable surrogate decision-maker[s] ... could not agree on the proper decision, ..." the guardian may invoke "the trial court's jurisdiction to allow the trial court to serve as the surrogate decision-maker." *In re Guardianship of Schiavo,* 780 So.2d 176, 178 (Fla. Dist.Ct.App.2001) ("Schiavo I"). Pursuant to Florida law, therefore, Judge Greer, as the presiding judge, had a statutory obligation to resolve the competing contentions between Michael Schiavo and Plaintiffs. *Fla. Stat.* § 765.105.

---

**3.** Plaintiffs have submitted affidavits of health care professionals regarding Theresa's medical status, treatment techniques and therapies which are available and their opinions regarding how and whether these treatments might improve Theresa's condition. Plaintiffs have not, however, discussed these affidavits in their papers and how they relate to the claimed constitutional deprivations.

Plaintiffs offer no authority for their contention that Judge Greer compromised the fairness of the proceeding or the impartiality of the court by following Florida law and fulfilling his statutory responsibilities under Chapter 765 as presiding judge and decision-maker.[4] Plaintiffs' argument is that Judge Greer could not fulfill his judicial duties impartially while at the same time fulfilling his statutory duty to resolve the competing contentions of the parties as surrogate or proxy "to make decisions about life-prolonging procedures." *In re Guardianship of Schiavo,* No. 2D05–968, 2005 WL 600377 at *4 (Fl. Ct.App. March 16, 2005)("*Schiavo VI*").

Plaintiffs' argument effectively ignores the role of the presiding judge as judicial fact-finder and decision-maker under the Florida statutory scheme. By fulfilling his statutory judicial responsibilities, the judge was not transformed into an advocate merely because his rulings are unfavorable to a litigant. Plaintiffs' contention that the statutory scheme followed by Judge Greer deprived Theresa Schiavo of an impartial trial is accordingly without merit. Defendant is correct that no federal constitutional right is implicated when a judge merely grants relief to a litigant in accordance with the law he is sworn to uphold and follow. This Court concludes that Plaintiffs cannot establish a substantial likelihood of success on the merits of Count I.

## B. Count II—Violation of Fourteenth Amendment Procedural Due Process Rights

In Count II, Plaintiffs contend that Theresa Schiavo's Fourteenth Amendment procedural due process rights were violated by Judge Greer's (1) failure to appoint a guardian *ad litem* (Dkt.1, ¶ 53), (2) failure to appoint an independent attorney to represent Theresa Schiavo's legal rights (Dkt.1, ¶ 54) and (3) denial of what Plaintiffs describe as "access to court" by his "fail[ure] to ever meet Terri personally" and failure to "personally assess Terri's level of cognition and her responsiveness" (Dkt.1, ¶ 55).

■ Initially, the Court finds no authority recognizing as a matter of federal constitutional or statutory right that a state trial judge is required to "personally assess" a ward's "level of cognition and ...responsiveness." *Fla. Stat.* § 744.3725, on which Plaintiffs rely, is applicable to an action seeking to commit the ward to a facility and other circumstances not relevant to this case. Plaintiffs' conclusory allegation that Judge Greer denied Theresa Schiavo access to court by not requiring her presence is without merit.

■ With respect to Plaintiffs' contention that Judge Greer violated Theresa Schiavo's procedural due process rights by failing to appoint a guardian *ad litem*, the record belies this contention. In June, 1998, Judge Rives *sua sponte* appointed Richard L. Pearse, Jr., Esq. as guardian *ad litem* "for the purpose of reviewing the request for termination of life support on behalf of the wards [sic]." *In re Guardianship of Schiavo,* No. 90–2908–GD–003 (Pinellas Cty. Circ. Ct., June 11, 1998). The record reflects that attorney Pearse "fully complied with his June 11, 1998 Court Order of appointment" and was accordingly discharged on June 16, 1999 by Judge Boyer of the Pinellas County Cir-

---

4. During argument, Plaintiffs' counsel explained their criticism of Judge Greer's official actions as Judge Greer having exceeded his lawful authority by acting as a guardian contrary to *Fla. Stat.* § 744.309(1)(b). Con-

trary to Plaintiffs' argument, § 744.309 merely prohibits a judge from acting as a guardian except under certain specified familial circumstances.

cuit Court. Pearse served as guardian *ad litem* for one year and ultimately testified as a witness in the trial before Judge Greer. *In re Guardianship of Schiavo*, No. 90–2908–GD–003 (Pinellas Cty. Circ. Ct., Feb. 28, 2000).[5] Accordingly, assuming Fourteenth Amendment procedural due process requires the appointment of a guardian *ad litem*, there would be no constitutional deprivation here because three guardians *ad litem* were appointed to represent Theresa Schiavo's interests over the course of the litigation.

■■■■■ Plaintiffs' last contention is that Theresa Schiavo's procedural due process rights were violated by Judge Greer's refusal to appoint an independent attorney to represent her interests. The due process clause is implicated when there is a "deprivation of life, liberty or property at the hands of the government." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). If one or more of these constitutionally protected interests is at stake, as they undoubtedly are in this case, the due process clause requires notice and the opportunity to be heard. *Id.* "It is ... fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner." *Fuentes v. Cortese*, 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Unquestionably, in some circumstances, a meaningful opportunity to be heard includes the right to be represented by counsel. However, "due process is a flexible concept that varies with the particular circumstances of each case, and to determine the requirements of due process in a particular situation we must apply the balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47

L.Ed.2d 18 (1976)." *Grayden*, 345 F.3d at 1232–33.

The *Mathews* balancing test requires consideration of three distinct factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335, 96 S.Ct. 893.

■■■ The first factor weighs the interest at stake. Plaintiffs urge that Theresa Schiavo's life is at stake, while Defendant argues that her liberty to exercise her right to refuse medical treatment is the interest being adjudicated. In either case, a fundamental and important interest is implicated in the court proceedings determining the removal of artificial life support.

■■■ The second *Mathews* factor requires consideration of the risk of erroneous deprivation under the procedures used and the probable value of the additional protections urged by the Plaintiffs. Theresa Schiavo's case has been exhaustively litigated, including an extensive trial, followed by another "extensive hearing at which many highly qualified physicians testified" to reconfirm that no meaningful treatment was available, and six appeals. As the Florida Second District Court of Appeal stated, "few, if any, similar cases have ever been afforded this heightened level of process." *Schiavo VI*, 2005 WL 600377 at *3.

---

**5.** The record also reveals that attorney John H. Pecarek was appointed as guardian *ad litem* early in the proceedings. *In re Guardianship of Schiavo*, No. 90–2908–GD–003 (Pinellas Cty. Circ. Ct., Feb. 17, 1994). Late in the litigation, at the request of Florida Governor Jeb Bush, Pinellas County Chief Judge David Demers also appointed attorney Jay Wolfson, M.D. as guardian *ad litem*. *Schiavo VI*, 2005 WL 600377 at *1, n. 2.

· Throughout the proceedings, the parties, represented by able counsel, advanced what they believed to be Theresa Schiavo's intentions concerning artificial life support. In Florida, counsel for Michael Schiavo as Theresa Schiavo's guardian owed a duty of care to Theresa Schiavo in his representation. *Op. Atty. Gen.* 96–94 (November 20, 1996). Finally, with respect to presenting the opposing perspective on Theresa Schiavo's wishes, the Court cannot envision more effective advocates than her parents and their able counsel. Plaintiffs have not shown how an additional lawyer appointed by the court could have reduced the risk of erroneous rulings.

With regard to the third factor, without question the state of Florida has an interest in the welfare of its citizens and in the legal process for adjudicating disputed claims such as were presented to Judge Greer in this case, as evidenced by Florida's well defined statutory scheme. The court's inherent authority to appoint a guardian *ad litem*, consult independent experts or appoint an attorney if warranted protects the state's interest.

Balancing the three factors, this court concludes that Theresa Schiavo's life and liberty interests were adequately protected by the extensive process provided in the state courts. Defendant Michael Schiavo and Plaintiffs, assisted by counsel, thoroughly advocated their competing perspectives on Theresa Schiavo's wishes. Another lawyer appointed by the court could not have offered more protection of Theresa Schiavo's interests. Accordingly, Plaintiffs have not established a substantial likelihood of success on the merits on Count II.

### C. Count Three—Violation of Fourteenth Amendment Right to Equal Protection of the Law

For the same reasons relief under Count I was not appropriate, the relief sought in Count III via the equal protection clause is without merit. Plaintiff has not established a substantial likelihood of success on the merits of the claims set forth in Count III. *See Cruzan v. Missouri Dept. of Health,* 497 U.S. 261, 287, 110 S.Ct. 2841, 111 L.Ed.2d 224 n. 12 (1990) ("The differences between the choice made *by* a competent person to refuse medical treatment, and the choice made *for* an incompetent person by someone else to refuse medical treatment, are so obviously different that the State is warranted in establishing rigorous procedures for the latter class of cases which do not apply to the former class.") (emphasis in original).

### D. Counts IV and V—Violation of Religious Land Use and Institutionalized Persons Act (RLUIPA) and Violation of First Amendment Free Exercise of Religion Clause

Plaintiffs bring Counts IV and V alleging that Theresa Schiavo's right to exercise her religion has been burdened by the state court's order to remove the feeding tube. With respect to Count IV of the Complaint, Plaintiffs allege a claim under the Religious Land Use and Institutionalized Persons Act (42 U.S.C. § 2000cc–1), claiming that her rights to free exercise of her religion have been burdened by the state court's order authorizing removal of her feeding tube in that removal of the feeding tube "imposes a substantial burden on Terry's religious free exercise." That statute expressly requires, however, that "[n]o *government* shall impose a substantial burden on the religious exercise of a person …" 42 U.S.C. § 2000cc(a) (emphasis added).

In Count V, Plaintiffs make a similar contention under the 42 U.S.C. § 1983 and the free exercise clause, alleging that "Terry's religious beliefs are burdened" by execution of order "in that Terry is being

forced to engage in an activity contrary to the tenets of her Roman Catholic faith . . . ." Plaintiffs allege that Defendants have a constitutional duty to accommodate "Terry's sincerely-held religious beliefs."

Undoubtedly, Terry Schiavo enjoys, by virtue of 42 U.S.C. § 2000–cc(a), a statutorily protected right not to have substantial burdens placed on her religious exercise by the government. The plain language of the statute prohibits government from imposing a substantial burden on the religious exercise of an individual such as Theresa Schiavo. Similarly, the Free Exercise Clause contained in the First Amendment of the Constitution expressly protects the exercise of religion. In their Complaint, Plaintiffs allege that the state court's order imposes a substantial burden on Theresa Schiavo's free exercise of religion. (Complaint, ¶ 67).

 In order to succeed on either claim, however, Plaintiffs must establish that the Defendants were state actors. Plaintiffs' claims fail because neither Defendant Schiavo nor Defendant Hospice are state actors. Moreover, the fact that the claims were adjudicated by a state court judge does not provide the requisite state action for purposes of the statute or the Fourteenth Amendment. *See Harvey v. Harvey*, 949 F.2d 1127, 1133–34 (11th Cir.1992)("Use of the courts by private parties does not constitute an act under color of state law."); *Torres v. First State Bank of Sierra County*, 588 F.2d 1322, 1326–27 (10th Cir.1978)("We do not think that the 'color of law' reference in § 1983 was intended to encompass a case such as this one, where the only infirmities are the excesses of the court order itself, . . . subject to the normal processes of appeal."); *see also Dahl v. Akin*, 630 F.2d 277, 281 (5th Cir.1980).

This court appreciates the gravity of the consequences of denying injunctive relief. Even under these difficult and time strained circumstances, however, and notwithstanding Congress' expressed interest in the welfare of Theresa Schiavo, this court is constrained to apply the law to the issues before it. As Plaintiffs have not established a substantial likelihood of success on the merits, Plaintiffs' Motion for Temporary Restraining Order (Dkt.2) must be DENIED.