**GENERAL MOTORS CORPORATION,**
a Delaware corporation, Plaintiff,

v.

**PHAT CAT CARTS, INC., a Florida
corporation f/k/a The Little Car
Company, Inc., Defendant.**

No. 8:06–cv–900–SCB–MSS.

United States District Court,
M.D. Florida,
Tampa Division.

Oct. 18, 2006.

Preliminary Injunction Order
Nov. 1, 2006.

Order on Motion for Summary
Judgment July 19, 2007.

Final Judgment Aug. 10, 2007.

Armando Pedro Rubio, Seipp, Flick & Kissane, PA, Coral Gables, FL, Gregory D. Phillips, Scott R. Ryther, Thomas R. Lee, Howard, Phillips & Andersen, Salt Lake City, UT, for Plaintiff.

Bernard R. Mazaheri, William John Gadd, Mazaheri Gadd, P.A., Clearwater, FL, for Defendant.

### *ORDER*

BUCKLEW, District Judge.

This cause comes before the Court for consideration of Plaintiff's Motion for Preliminary Injunction. (Doc. No. 2.) This motion was considered by the United States Magistrate Judge, pursuant to a specific order of referral. (Doc. No. 22.) Magistrate Judge Scriven held a hearing on the motion on August 28, 2006. (Doc. No. 33.) Thereafter, Magistrate Judge Scriven filed her Report and Recommendation, recommending that preliminary in-

junctive relief be granted and that Defendant "be directed that it cannot use in any manner the trademarks, logos, or trade dress, which are identical or closely resemble those listed in Plaintiff's Verified Complaint." (Doc. No. 44.) All parties were furnished copies of the Report and Recommendation on September 28, 2006, and were afforded the opportunity to file objections pursuant to 28 U.S.C. § 636(b)(1). No such objections were filed. Upon consideration of the Report and Recommendation, and upon this Court's independent examination of the file, it is determined that the Report and Recommendation should be adopted.

Accordingly, it is now **ORDERED AND ADJUDGED** that

(1) The Magistrate Judge's Report and Recommendation (Doc. No. 44) is adopted and incorporated by reference in this Order of the Court;

(2) Plaintiff's Motion for Preliminary Injunction (Doc. No. 4) is **GRANTED** to the extent consistent with the Magistrate Judge's Report and Recommendation; and

(3) The parties are directed to submit, by October 31, 2006, a joint proposed preliminary injunction order consistent with the Magistrate Judge's Report and Recommendation to be entered by this Court.

### *REPORT AND RECOMMENDATION*

SCRIVEN, United States Magistrate Judge.

**THIS CAUSE** comes before the Court in consideration of Plaintiff General Motor Corporation's Motion for Preliminary Injunction (the "Motion"), filed on May 12, 2006.[1] (Dkt.2) In its Motion, General Mo-

---

1. This matter was referred on July 28, 2006, to the Undersigned by the District Court

Judge assigned to this case for a Report and Recommendation.

tors (the "Plaintiff") requests that the Court issue a preliminary injunction against Defendant, Phat Cat Carts, Inc. (the "Defendant"). Plaintiff filed this trademark infringement action alleging that Defendant has infringed upon its Hummer and Chevrolet trademarks and trade dress. (Dkt.1) Plaintiff is the manufacturer of motor vehicles and has been in the business of selling motor vehicles, parts, and accessories for many years. (Dkt.3) Defendant, a former licensee of Plaintiff, who sells golf carts designed to look like certain cars sold by Plaintiff, opposes the Motion. (Dkt.21) Defendant's primary contention is that Plaintiff allegedly breached a licensing agreement by failing to pursue other infringers, whom Defendant contends, sold similar golf carts without consent of Plaintiff. As such, Defendant contends that it has the right to refuse to pay the licensing fees, and that it can continue to use the license. (Dkt.21) Defendant suggests additionally that the failure of Plaintiff to pursue the other alleged infringers has rendered Plaintiff's trade marks and trade dress a nullity.

Having considered the respective positions of the parties and having considered the evidence submitted in support of and in opposition to the Motion, the Undersigned **REPORTS AND RECOMMENDS** that Plaintiff's Motion be **GRANTED** and a preliminary injunction be **ISSUED** against Defendant.

*PROCEDURAL HISTORY*

Plaintiff General Motors filed a lawsuit asserting the following claims against Defendant: Trademark and Trade Dress Dilution under 15 U.S.C. § 1125(c); Federal Trademark Infringement and Counterfeiting under 15 U.S.C. § 1114; False Designation of Origin or Sponsorship, False Advertising, and Trade Dress Infringement

under 15 U.S.C. § 1125(a); and Common Law Trademark Infringement. (Dkt.1) Plaintiff filed a Motion for Preliminary Injunction on May 12, 2006. (Dkt.2) The Court held an evidentiary hearing on the Motion on Monday, August 28, 2006. Plaintiff submitted a verified complaint with an accompanying affidavit as evidence in the hearing. (Dkt.1) Defendant relied solely on the testimony of Brian Wilson, owner and president of Phat Cat Carts, Inc., who testified live at the hearing.[2]

*FINDINGS OF FACT*

1. Plaintiff General Motors is a Delaware Corporation with its principle place of business in Detroit, Michigan.

2. Defendant Phat Cat Carts, Inc., is a corporation organized under the laws of the State of Florida with its principle place of business in Clearwater, Florida. Brian Wilson is the sole owner and president of the corporation.

3. In 1924, Plaintiff first registered the trademark CHEVROLET®, and has since obtained numerous other registrations for the mark. (Dkt.1) Plaintiff has registered with the United States Patent and Trademark Office the following: CHEVY®; MONTE CARLO®; CHEVROLET POLYGON LOGO®; and the CHEVROLET CHEVRONS LOGO®. (Dkt.1) Plaintiff's CHEVROLET® trade marks and trade dress are collectively referred to as "Chevrolet Marks."

4. Since 1981, Plaintiff has used the HUMMER® trademark, service mark, and trade dress. In 1999, Plaintiff acquired all the rights to the trademark HUMMER®. (Dkt.3) Plaintiff has obtained United States trademark registrations for the trademark HUMMER®, as well as the trade dress

2. Defendant filed an untimely notice of intent to introduce an expert opinion at the hearing which was opposed by Plaintiff. At the hearing, Defendant announced that the expert would not be called.

front design of the Hummer vehicle, the HUMMER GRILL® (Dkt.1) Plaintiff's HUMMER trade marks and trade dress are collectively referred to as "Hummer Marks." (Dkt.1)

5. Plaintiff and its predecessors have extensively employed and caused to be advertised and publicized throughout the world, the Chevrolet and Hummer Marks to identify CHEVROLET® and HUMMER® vehicles, parts, products, and services.

6. The distinctive design and shape of the CHEVROLET® and HUMMER® vehicles is immediately identifiable and associated by the general public with the Chevrolet Marks and Hummer Marks and General Motors, and has thus acquired secondary meaning. (Dkt.1)

7. Plaintiff and its predecessors have spent hundreds of millions of dollars and have expended significant effort in advertising and promoting authorized CHEVROLET® and HUMMER® products in developing the Chevrolet Marks and Hummer Marks throughout the world. (Dkt.1)

8. Defendant is in the business of providing golf cart body kits. (Dkt.1) Defendant had obtained a license from Plaintiff for the use of the Chevrolet Marks and Hummer Marks in manufacturing, marketing, and advertising golf cart body kits, which are used to turn a golf cart into a "knockoff" of HUMMER® and CHEVROLET® vehicles. In the licensing agreement, Defendant agreed to pay Plaintiff six percent (6%) of its revenue in exchange for the use of Plaintiff's trademarks. Defendant's license expired and was terminated at the latest in 2004, perhaps as early as in 2002.

9. Plaintiff licenses the Hummer Marks and Chevrolet Marks to other companies, including competitors of Defendant.

10. At the time of filing the Verified Complaint, Defendant continues to offer golf cart kits that use the precise Chevrolet Marks as well as the Hummer Marks. (Dkt.3) At the time of filing the Verified Complaint, Defendant holds itself out falsely as a licensee of Plaintiff, when it knows it is not. Owner Brian Wilson admits that his company continues to hold itself out to the public as being licensed by Plaintiff.

11. Defendant has intentionally infringed on the trade marks and trade dress of the Chevrolet and Hummer Marks.

## STANDARD OF REVIEW

■ In this instance Plaintiff requests that the Court issue a preliminary injunction against Defendant. Plaintiff seeks to halt Defendant's alleged trademark and trade dress infringement and dilution in offering golf cart kits that resemble HUMMER® and CHEVROLET® vehicles to the public. The Court may issue a preliminary injunction if the moving party shows: a) a substantial likelihood of success on the merits; b) that the moving party will suffer irreparable injury if the injunction is not issued; c) that the threatened injury to the moving party outweighs the potential damage that the proposed injunction may cause the non-moving party; and d) that the injunction will not be adverse to the public interest. *See Oakley, Inc. v. Sunglass Hut Int'l,* 316 F.3d 1331, 1338–39 (Fed.Cir.2003); *All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc.,* 887 F.2d 1535, 1537 (11th Cir.1989).

A consideration of these factors by the Court "requir[es] a delicate balancing of the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury which could

possibly flow from the denial of preliminary relief." *Siegel v. LePore,* 234 F.3d 1163, 1178 (11th Cir.2000). The decision to grant or deny a preliminary injunction is within the sound discretion of the district court. *Palmer v. Braun,* 287 F.3d 1325, 1329 (11th Cir.2002). Thus, the Court must determine whether issuance of a preliminary injunction is appropriate in this matter.

## LIKELIHOOD OF SUCCESS ON THE MERITS

### A. Trademark Infringement

Plaintiff asserts that it has shown a substantial likelihood of success on the merits for its trademark infringement claim against Defendant. 15 U.S.C. § 1114(1)(a) provides that any person who shall, without the consent of the registrant, use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant. Thus, in order to succeed on a trademark infringement claim in this case, Plaintiff must prove that 1) its mark was used in commerce by Defendant without its consent, and 2) the unauthorized use was likely to cause confusion or to cause mistake or to deceive. 15 U.S.C. § 1114(1)(a).

First, Plaintiff has sufficiently shown that Defendant used its registered trademark in commerce without Plaintiff's consent. It is clear that Plaintiff and Defendant had a licensing agreement whereby Defendant was entitled to use the Chevrolet Marks to manufacture, advertise and sell golf carts and golf cart body kits as long as it paid Plaintiff six percent (6%) of the revenue made by selling the golf carts and golf cart body kits. However, Defendant admitted that this licensing agreement expired and was terminated as early

as in 2002, but in 2004 at the latest. At the hearing Brian Wilson, Owner of Phat Cats Carts, Inc., freely admitted subsequently using both the Hummer and Chevrolet Marks to sell golf carts even though he knew that the licensing agreement had been terminated. Wilson also admitted that the company holds itself out to the public as being affiliated with General Motors even though it is no longer affiliated with the corporation. Defendant admitted using Plaintiff's registered trademarks in commerce without Plaintiff's consent. As such, Plaintiff has sufficiently shown that Defendant used its trademarks in commerce without its consent.

Second, Plaintiff must show that the unauthorized use of the Hummer and Chevrolet marks by Defendant is likely to cause confusion among the public in order to succeed on the merits of its trademark infringement claim against Defendant. Plaintiff contends that Defendant's continued use of the identical, registered Hummer Marks and Chevrolet Marks shows a likelihood of confusion among the public. (Dkt.3); *See International Cosmetics, Inc. v. Gapardis Health and Beauty, Inc.,* 303 F.3d 1242, 1249 (11th Cir.2002) (ruling that concurrent use of the same trademark poses a substantial likelihood of confusion among consumers); *Dive N' Surf, Inc. v. Anselowitz,* 834 F.Supp. 379, 382 (M.D.Fla.1993) (ruling that where trademarks are substantially similar as to both design and use, the court presumes that the *defendant's counterfeit items caused public confusion in the marketplace).* However, Defendant contends that no reasonable consumer would mistake a golf cart for an automobile; therefore, Plaintiff has failed to establish that there is a likelihood of confusion.

■ Defendant's argument that no confusion exists because no reasonable consumer would confuse a golf cart with an

automobile is without merit. The "likelihood of confusion test" does not require that a plaintiff prove that consumers would likely confuse the alleged infringer's product with the real product. In order to meet the "likelihood of confusion test," it is sufficient for a plaintiff to show that the unauthorized use of the trademark has the effect of misleading the public to believe that the user is sponsored or approved by the plaintiff. *Id.* at 1492.

In this instance Plaintiff has shown that it is likely that the public will be misled to believe that Defendant is sponsored or approved by Plaintiff. Plaintiff has shown that a strong likelihood of confusion exists due to Defendant's continued use of Plaintiff's Hummer Marks and Chevrolet Marks after the termination of the license. Here, the public would easily assume an association between Plaintiff and Defendant because Defendant holds itself out as a licensee of Plaintiff; it uses the trademark of Plaintiff's products on its golf carts and it has not disclaimed its disassociation with Plaintiff. *See Burger King Corp. v. Mason*, 710 F.2d 1480 (11th Cir.1983) (holding that continued use by one whose trademark license had been cancelled satisfies the likelihood of confusion test and constitutes trademark infringement).

■ Based on the evidence presented at the hearing and the evidence presented in Plaintiff's Verified Complaint, the Court finds that Plaintiff has made a sufficient showing that Defendant has used Plaintiff's Hummer Marks and Chevrolet Marks in commerce without Plaintiff's consent. Additionally, the Court finds that Defendant's unauthorized use of these trademarks is likely to cause confusion among the public. As such, the Undersigned concludes that Plaintiff has shown a substantial likelihood of success on the merits of its trademark infringement claim pursuant to 15 U.S.C. § 1114.

Plaintiff's showing of a substantial likelihood of success on the merits of its trademark infringement claim is sufficient to meet the first requisite for obtaining preliminary injunctive relief. *See Schiavo ex rel. Schindler v. Schiavo*, 357 F.Supp.2d 1378, 1384 (M.D.Fla.2005) (holding that to obtain temporary injunctive relief, a plaintiff must show a substantial likelihood of success on at least one claim). Thus, it is unnecessary for the Court to analyze the likelihood of success of Plaintiff's other claims against Defendant. However, the Court analyzes the likelihood of success of Plaintiff's other claims against Defendant in the instant case since these issues were addressed by the parties at the evidentiary hearing.

**B. Trade Dress Infringement**

■ Plaintiff also contends that it has shown a substantial likelihood of success on the merits for its trade dress infringement claim against Defendant. The Eleventh Circuit has recognized that the design of a product itself may constitute protectable trade dress under § 43(a) of the Lanham Act, 15 U.S.C. § 1125. *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir.1983). "The term 'trade dress' refers to the appearance of a product when that appearance is used to identify the producer." *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1202 (11th Cir.2004). In order to prove a claim for trade dress infringement, a plaintiff must prove: 1) that the product design of the two products is confusingly similar; 2) that the features of the product design are primarily nonfunctional; and, 3) that the product design is inherently distinctive or has acquired secondary meaning. *Id.*

In assessing the first element of the claim, the Eleventh Circuit stated, "[t]he factors relevant to determining whether

there is a likelihood of confusion between the trade dress of two products are 'essentially the same' as those relevant to determining whether there is a likelihood of confusion between the parties' trademarks." *John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 981 (11th Cir. 1983). The Court held that a plaintiff who establishes a likelihood of confusion for a trademark infringement claim, also establishes the first element of a trade dress infringement claim. *Id.*

■ Similarly, Plaintiff in this instance has already established in its trademark infringement claim that there is a likelihood of confusion between Defendant's golf cart kits and Plaintiff's Hummer and Chevrolet vehicles. Consequently, Plaintiff has also made a sufficient showing that the two products have confusingly similar trade dress. As such, Plaintiff has shown that it is substantially likely to succeed on the first element of its trade dress infringement claim against Defendant.

■■ Second, in a trade dress infringement action a plaintiff has the burden to prove that the product design features are primarily non-functional. *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC,* 369 F.3d at 1202. A product feature is considered functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article. *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC,* 369 F.3d at 1203.

■ Plaintiff has made a sufficient showing that the product design features are primarily non-functional. First, in the Verified Complaint Plaintiff established that the Hummer Marks and the Chevrolet Marks are not essential to the use or purpose of its vehicles, but are merely aesthetic in nature. (Dkt.1, ¶¶ 8, 13, 14, 20) In fact, the overall appearance of Plaintiff's vehicles distinguish them from competitors' vehicles. *Id.* Furthermore, Plaintiff has shown that the same conclusion of non-functionality is appropriate in the context of knockoff golf carts and golf cart body kits as is evident from the numerous alternative custom golf cart designs available on the market. (Dkt.1, ¶¶ 14, 20) Plaintiff has offered evidence that similar product features have been designated as non-functional. *General Motors Corp. v. Let's Make A Deal,* 223 F.Supp.2d 1183 (D.Nev.2002) (finding the Hummer trade dress on the defendant's replica car kits non-functional). Defendant did not present any evidence at the hearing that suggested the golf cart body features are functional.

Finally, a plaintiff must show that its trade dress is inherently distinctive or has acquired secondary meaning. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 769, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) Plaintiff has made this showing in the instant case. As established in the Verified Complaint, Plaintiff has extensively employed the HUMMER® and CHEVROLET® trade dress and caused it to be advertised throughout the world. As such, the distinctive design and shape of its vehicles are immediately identifiable and associated by the general public with Plaintiff, and thus its trade dress has acquired secondary meaning. (Dkt.1, ¶¶ 15, 21) Furthermore, Plaintiff and its predecessors have spent hundreds of millions of dollars and have expended significant effort in advertising and promoting authorized CHEVROLET® and HUMMER® products in developing the Chevrolet Marks and Hummer Marks throughout the world. (Dkt.1)

Accordingly, the Court finds that Plaintiff has made a sufficient showing that it can prove all four elements of its trade dress infringement claim against Defendant.

### C. Trademark Dilution

The Trademark Dilution Act provides in relevant part that "the owner of a famous mark shall be entitled . . . . to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark. . . ." 15 U.S.C. § 1125(c)(1). To establish a claim under 15 U.S.C. § 1125(c)(1), a plaintiff must show: 1) that the mark is famous; 2) that the alleged infringer adopted the mark after the mark became famous; 3) the defendant's use is commercial; and, 4) that the infringer diluted the mark. *Savin Corp. v. Savin Group*, 391 F.3d 439, 448–49 (2d Cir.2004).

It is clear that Plaintiff has presented ample evidence in the Verified Complaint and at the evidentiary hearing which shows Plaintiff will be able to prove the first three elements of its trademark dilution claim against Defendant. The only issue in dispute is whether Plaintiff has presented sufficient evidence to show that Defendant's use diluted Plaintiff's marks.

■ In order to prove that a defendant has diluted a plaintiff's trademark, the plaintiff must show actual dilution. *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 433, 123 S.Ct. 1115, 155 L.Ed.2d 1 (2003). In *Moseley*, affiliated corporations who owned the trademark "Victoria's Secret" brought a trademark dilution action against an adult novelty store named "Victor's Little Secret." *Id.* at 418, 123 S.Ct. 1115. The Supreme Court ruled that the plaintiffs were obligated to prove actual dilution rather than likely dilution, pursuant to 15 U.S.C. § 1125. *Id.* at 418, 123 S.Ct. 1115. The Court reasoned that "direct evidence of dilution such as consumer surveys will not be necessary if actual dilution can reliably be proved through circumstantial evidence the obvious case is one where the junior and senior marks are identical." *Id.* at 434, 123 S.Ct. 1115. The Court found that the corporations failed to present any evidence, direct or circumstantial, of actual dilution. Thus, the Court held that the corporations failed to prove actual dilution pursuant to 15 U.S.C. § 1125.

■ Lower courts following the *Moseley* decision have determined that a plaintiff's showing that the defendant used identical trademarks constitutes circumstantial evidence sufficient to support a finding of actual dilution. *See Nike Inc. v. Variety Wholesalers*, 274 F.Supp.2d 1352, 1372 (S.D.Ga.2003); *Pinehurst, Inc. v. Wick*, 256 F.Supp.2d 424, 431–32 (M.D.N.C.2003); *Savin Corp. v. Savin Group*, 391 F.3d 439, 452–53 (2nd Cir.2004) (holding that where a plaintiff who owns a famous senior mark can show the commercial use of an identical junior mark, such a showing constitutes circumstantial evidence of the actual dilution element of a trademark dilution claim).

■ Here, Plaintiff has made a sufficient showing that Defendant used and continues to use Plaintiff's identical Hummer Marks and Chevrolet Marks. Plaintiff submitted evidence in the Verified Complaint (Dkt.1) and at the hearing that proves that Defendant has used and continues using the precise Hummer Marks and Chevrolet Marks. In fact, Brian Wilson admitted that his company continues using identical Hummer and Chevrolet Marks in order to market, advertise, and sell golf carts and golf cart body kits. As such, the Court finds that Plaintiff's showing in this regard constitutes circumstantial evidence sufficient to prove actual dilution.

The Undersigned concludes that Plaintiff has shown a substantial likelihood of proving all four elements of trade dilution pursuant to 15 U.S.C. § 1125. Thus, the Undersigned concludes that Plaintiff is

substantially likely to succeed on the merits of its trademark dilution claim against Defendant.

### IRREPARABLE HARM

■ In order to obtain the injunctive relief requested, Plaintiff must show that it will suffer irreparable harm or injury if the preliminary injunction is not issued. *Oakley, Inc. v. Sunglass Hut Int'l,* 316 F.3d at 1338–39. Plaintiff correctly asserts that irreparable injury is presumed in trademark infringement cases where Plaintiff has established a likelihood of success on the merits. (Dkt.3)

It is usually recognized in trademark infringement cases that there is not an adequate remedy at law to redress infringement and infringement by its nature causes irreparable harm. *Tally–Ho, Inc. v. Coast Community College,* 889 F.2d 1018, 1029 (11th Cir.1989). Moreover, a presumption may arise in a case of trademark infringement where, as here, the court has held that the plaintiff has established a likelihood of success on the merits. *See E. Remy Martin & Co., S.A. v. Shaw–Ross International Imports, Inc.,* 756 F.2d 1525, 1530 (11th Cir.1985).

Even if irreparable injury were not presumed in this case, Plaintiff has shown that it will suffer irreparable injury if an injunction is not issued in this case. Plaintiff presented evidence that it has lost the ability to control the nature and quality of the services provided under Defendant's infringing mark. Additionally, Plaintiff has shown that absent a preliminary injunction there is no other adequate remedy to halt Defendant's admitted, continued use of Plaintiff's Hummer Marks and Chevrolet Marks. Finally, Brian Wilson implied that his company would continue using Plaintiff's registered trademarks until notified otherwise by the Court. Thus, Plaintiff has shown that it will suffer irreparable injury if the Court does not issue a preliminary injunction against Defendant.

### BALANCE OF HARDSHIPS

The third element that Plaintiff must show in order to obtain a preliminary injunction is that the threatened injury to Plaintiff outweighs the potential damage that the proposed injunction may cause to Defendant.

Specifically, the Court finds that the balance of hardships tips in favor of Plaintiff. Without a preliminary injunction Plaintiff would lose control of its trademarks because Defendant would freely continue to use Plaintiff's registered marks. This would result in a loss of money and goodwill for Plaintiff that could not easily be calculated or redressed. Moreover, Defendant's losses, if any, from the injunction would be a loss of revenues that is easily calculable.

Defendant's "David and Goliath" argument on this point is unpersuasive. Defendant cannot be heard and complain that it would be harmed when it brought this injury upon itself. Defendant had a license to use Plaintiff's Chevrolet Marks, which was terminated. Defendant stopped paying royalties and continued to use Plaintiff's trademarks without approval. *See S & R Corp. v. Jiffy Lube International, Inc.,* 968 F.2d 371, 379 (3rd Cir.1992) (stating that the defendant who stopped paying royalties to the plaintiff inflicted the harm upon itself). Brian Wilson testified that he felt he should be able to use the trademarks without paying royalties because General Motors failed to protect his business from other infringing golf cart companies. When asked, however, Mr. Wilson could not remember a specific provision in the licensing agreement that obligated Plaintiff to protect his business from competitors. Finally, Mr. Wilson admitted that the infringement was intentional. Therefore, the Court finds that the harm caused by Defendant's continual use of Plaintiff's trademarks outweighs any harm

caused to Defendant by issuing a preliminary injunction.

*PUBLIC INTEREST*

Finally, the Plaintiff must show that the issuance of a preliminary injunction will not be adverse to the public interest. Plaintiff argues correctly that the public is interested in fair competitive practices and in the protection of trademarks and trade names. (Dkt.3) Issuing a preliminary injunction in the case would further that public interest.

*CONCLUSION*

After reviewing the evidence presented by Plaintiff in the Verified Complaint (Dkt.1) and by both parties at the evidentiary hearing, the Undersigned finds that Plaintiff has met its burden of proving that preliminary injunctive relief is appropriate in this case. First, Plaintiff has made a sufficient showing that it is substantially likely to succeed on the merits of its trademark infringement, trade dress and trademark dilution claims against Defendant. Second, Plaintiff has made a sufficient showing that it will be irreparably harmed absent the issuance of a preliminary injunction. Third, Plaintiff has made a sufficient showing that the balance of hardships weighs in favor of Plaintiff. Finally, the Plaintiff has made a sufficient showing that the public interest will be served by the Court's issuance of a preliminary injunction in this case.

Accordingly, the Undersigned **REPORTS AND RECOMMENDS** that Plaintiff's Motion should be **GRANTED** and a preliminary injunction should be **ISSUED.** Defendant should be **DIRECTED** that it cannot use in any manner the trademarks, logos or trade dress, which are identical or closely resemble those listed in Plaintiff's Verified Complaint.

*PRELIMINARY INJUNCTION ORDER*

BUCKLEW, District Judge.

This cause comes before the Court on Plaintiff, General Motors' ("GM") Motion for Preliminary Injunction. Pursuant to a specific order of referral, the motion was considered by United States Magistrate Judge Scriven at a hearing on August 28, 2006. At that hearing, GM submitted as evidence in support of its claims its Verified Complaint and an accompanying affidavit. Defendant, Phat Cat Carts, Inc. ("Phat Cat") relied solely on the testimony of Brian Wilson, owner and president of Phat Cat, who presented live testimony at the hearing.

Judge Scriven filed a Report and Recommendation recommending that preliminary injunctive relief be granted and that Defendant, Phat Cat, "be directed that it cannot use in any manner the trademarks, logos, or trade dress, which are identical or closely resemble those listed in Plaintiff's Verified Complaint." Phat Cat did not file any objections to the Report and Recommendation, and the District Court adopted it and incorporated it by reference in an Order dated October 18, 2006 (Doc. 46).

Accordingly, pursuant to *Fed.R.Civ.P.* 65, and on the basis of the findings of fact and conclusions of law in the Report and Recommendation, which have been adopted by the Court, Defendant, Phat Cat Carts, Inc., and all of its officers, directors, agents, servants, employees, and all other persons in active concert or participation with Defendant who receives actual notice of this Order, are preliminarily enjoined and restrained from:

1. Manufacturing, advertising, marketing, and/or selling golf car body kits and/or custom golf cars that use, copy, misappropriate the following trademarks or any colorable imitation or confusingly similar

variation of the following trademarks: HUMMER®, H1®, H2®, H3®, the HUMMER GRILL®, CHEVROLET®, CHEVY®, the CHEVROLET POLYGON LOGO®, the CHEVROLET CHEVRONS LOGO®, BEL AIR®, and MONTE CARLO®.

2. Manufacturing, advertising, marketing, and/or selling golf car body kits and/or custom golf cars that misappropriate the following trade dress or any colorable imitation or similar variation of the trade dress or design of the following vehicles: HUMMER® H1®, H2®, and H3®; and CHEVROLET BEL AIR® and MONTE CARLO®.

3. Otherwise violating GM's trademark and trade dress rights;

4. Instructing, assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 1 through 4 above.

**IT IS SO ORDERED.**

## ORDER ON MOTION FOR SUMMARY JUDGMENT

BUCKLEW, District Judge

This cause comes before the Court for consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 73) and Defendant's Response in Opposition (Doc. No. 75).[1]

Plaintiff moves for summary judgment against Defendants Phat Cat Carts, Inc. and Brian Wilson[2] with respect to all claims alleged in its Amended Verified Complaint, including Federal Trademark Dilution under 15 U.S.C. § 1125(c), Federal Trademark Counterfeiting and Infringement under 15 U.S.C. § 1114, False Designation and False Advertising under 15 U.S.C. § 1125(a), and common law trademark infringement and unfair competition. Plaintiff makes substantially the same arguments in its summary judgment motion that it made in support of its motion for preliminary injunction, which the Court granted on October 18, 2006.[3] (Doc. No. 46.) The Magistrate Judge's Report and Recommendation on Plaintiff's Motion for Preliminary Injunction (Doc. No. 44), and the Court's Order of Preliminary Injunction (Doc. No. 49), are hereby adopted and incorporated by reference.

To remedy Defendants' repeated and willful infringement and dilution of Plaintiff's rights, Plaintiff moves the Court to convert the Preliminary Injunction to a permanent injunction against Defendants.

1. "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1273–74 (11th Cir.2006) (quoting Fed.R.Civ.P. 56(c)).

2. Simultaneously with this motion, Plaintiff filed a motion for leave to file an Amended Complaint to add Brian Wilson, the owner of Defendant Phat Cat Carts, Inc., as a defendant in this action. (Doc. No. 72.) The Court denied that motion, finding that Plaintiff had unduly delayed in seeking leave to amend and that Defendant Phat Cat Carts, Inc. would be prejudiced by the amendment. (Doc. No. 78.) Accordingly, because Brian Wilson is not a defendant in this action, Plaintiff's Motion for Summary Judgment is **DENIED** to the extent Plaintiff seeks a judgment against him.

3. Plaintiff's Motion for Preliminary Injunction was considered by the United States Magistrate Judge pursuant to a specific order of referral. Magistrate Judge Scriven held a hearing on the motion, and thereafter, filed her Report and Recommendation, recommending that preliminary injunctive relief be granted. (Doc. No. 44.) On October 18, 2006, the Court adopted the Report and Recommendation and entered an Order of Preliminary Injunction against Defendant Phat Cat Carts, Inc. on November 1, 2006. (Doc. Nos.46, 49.)

Plaintiff also seeks an award of its damages trebled, or in an amount equal to Defendants' wrongful profits trebled, pursuant to 15 U.S.C. § 1117. Finally, Plaintiff seeks an award of attorneys' fees and costs incurred in this action, pursuant to 15 U.S.C. § 1117.

 Defendant Phat Cat Carts, Inc. has filed a limited Response in Opposition to the motion. Defendant argues that a material factual dispute remains with respect to its affirmative defenses of estoppel and laches and that the Court has not yet made any determination regarding these defenses. Defendant does not argue how these affirmative defenses defeat Plaintiff's claims, has not filed any evidentiary support for its argument, and does not dispute Plaintiff's version of the facts that support Plaintiff's claims. Accordingly, because Defendant has failed to identify any genuine issue of material fact that would preclude summary judgment, the Court rejects Defendant's argument and concludes that summary judgment is appropriate.

Upon consideration of Plaintiff's Motion and Defendant's Response in Opposition, and upon this Court's independent examination of the file in this case, it is now **ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART.** Plaintiff's Motion is **GRANTED** to the extent that the Court enters the following permanent injunction: Defendant Phat Cat Carts, Inc., and all of its officers, directors, agents, servants, employees, and all other persons in active concert or participation with Defendant who receives actual notice of this Order, are permanently enjoined and restrained from:

1. Manufacturing, advertising, marketing, and/or selling golf car body kits and/or custom golf cars that use, copy, misappropriate the following trademarks or any colorable imitation or confusingly similar variation of the following trademarks: HUMMER®, H1®, H2®, H3®, the HUMMER GRILL®, CHEVROLET®, CHEVY®, the CHEVROLET POLYGON LOGO®, the CHEVROLET CHEVRONS LOGO®, BEL AIR®, and MONTE CARLO®.

2. Manufacturing, advertising, marketing, and/or selling golf car body kits and/or custom golf cars that misappropriate the following trade dress or any colorable imitation or similar variation of the trade dress or design of the following vehicles: HUMMER® H1®, H2®, and H3®; and CHEVROLET BEL AIR® and MONTE CARLO®.

3. Otherwise violating GM's trademark and trade dress rights;

4. Instructing, assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 1 through 4 above.

Because Plaintiff has established intentional violations of its trademark rights, the Court concludes that Plaintiff is "entitled ... to recover (1) defendants' profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). Plaintiff is also entitled to an award of reasonable attorneys' fees under that statute. The Court sets this case for an evidentiary hearing to determine the appropriate amount of damages and attorneys' fees and costs to be awarded to Plaintiff under 15 U.S.C. § 1117. The evidentiary hearing shall be conducted on **Friday, August 10th, 2007, at 9:00 a.m.** before the Honorable Susan C. Bucklew in Courtroom 14A of the Sam M. Gibbons U.S. Courthouse, located at 801 North Florida Ave., Tampa, Florida 33602. A corporate representative for Defendant Phat Cat Carts, Inc., as well as Defendant's counsel, must be present at the hearing. Defendant's failure to appear at

the hearing shall result in the Court's considering Plaintiff's request for treble damages and attorneys' fees and costs as unopposed.

Having entered summary judgment against Defendant Phat Cat Carts, Inc., the Court cancels the pretrial conference set in this case for Tuesday, August 14, 2007, and removes this case from the Court's September 2007 trial calendar.

## FINAL JUDGMENT

BUCKLEW, District Judge.

Plaintiff General Motors Corporation ("GM") brought this action against defendant Phat Cat Carts, Inc. ("Phat Cat") asserting claims against Phat Cat, including Federal Trademark Dilution under 15 U.S.C. § 1125(c), Federal Trademark Counterfeiting and Infringement under 15 U.S.C. § 1114, False Designation and False Advertising under 15 U.S.C. § 1125(a), and common law trademark infringement.

On July 19, 2007, this Court entered summary judgment and a permanent injunction against Phat Cats and all of its officers, directors, agents, servants, employees, and all other persons in active concert or participation with them. [Order, July 19, 2007 (hereafter "Summary Judgment Order") (Doc. 82) at 3] This Court has also determined that GM "is 'entitled ... to recover (1) defendants' profits, (2) any damages sustained by the plaintiff [GM], and (3) the costs of the action.' 15 U.S.C. § 1117(a)," and that GM "is also entitled to an award of reasonable attorneys' fees under that statute." [Summary Judgment Order at .4] The Court then set this matter for "an evidentiary hearing to determine the appropriate amount of damages and attorneys' fees and costs to be awarded to Plaintiff [GM] under 15 U.S.C. § 1117," scheduled such hearing for Friday, August 19, 2007 at 9:00 a.m. *[Id.]*

The Court held the evidentiary hearing on August 10, 2007. GM was represented by Gregory D. Phillips and Scott R. Ryther of Howard, Phillips & Andersen, and Pat Cat was represented by Bernard R. Mazaheri of Mazaheri & Gadd. Having reviewed the memoranda and other pleadings submitted by the parties, having considered the evidence presented, and having heard the arguments of counsel, and good cause appearing,

IT IS HEREBY ORDERED, ADJUGED, AND DECREED that:

1. Pursuant to 15 U.S.C. § 1117(b) and based upon this Court's earlier rulings and orders, including the Magistrate Judge's Report and Recommendation, recommending that preliminary injunctive relief be granted (Doc. No. 44), this Court's adoption of the Report and Recommendation (Doc No. 46), this Court's Order of Preliminary Injunction (Doc. No. 49), the Magistrate Judge's Report and Recommendation, recommending an Order granting GM's Motion for Contempt (Doc. No. 60), this Court's adoption of the Report and Recommendation and Order of Contempt (Doc. No. 63), and this Court's Summary Judgment Order (Doc. No. 82), GM is entitled to an award of (i) three times Phat Cat's profits derived from sales of infringing golf carts, (ii) GM's attorney's fees and costs, and (iii) prejudgment interest on Phat Cat's profits trebled from the date of service of the summons and complaint until the date of this Judgment at the rate set forth in 26 U.S.C. § 6621(a)(2).

2. The Court finds, based on the evidence presented, that the amount of Phat Cat's profits derived from the production and sale of golf carts and related products that infringed GM's trademarks and trade dress is $442,103.91. Accordingly, this amount shall be trebled, and GM is awarded a total disgorgement of Defendant's

profits (after trebling) equal to $1,326,311.70.

3. GM is awarded attorneys' fees in the amount of $83,985.25 and taxable costs of $2,472.63 (which amounts do not include the $21,116.25 in fees and $2.70 in taxable costs previously awarded to GM by Order (Doc. No. 71) as part of GM's Motion For Contempt), which amounts have not yet been paid by Defendant Phat Cat. Thus, the total amount of attorneys' fees and costs awarded to GM in this matter is $107,576.83.

4. The amount of prejudgment interest awarded to GM is $119,804.10, the calculation of which pursuant to 26 U.S.C. § 6621(a)(2) is set forth in detail in Schedule "A" attached hereto.

5. Combining the amounts set forth in Paragraphs 2–4 above, the total monetary amount awarded to GM against Phat Cat is $1,553,692.60.

6. The Permanent Injunction set forth in the Court's earlier Summary Judgment Order (Doc. No. 82) is hereby incorporated fully by this reference.

7. Phat Cat and its owners, shareholders, officers, directors, employees, and successors are ordered to file with this Court and serve upon GM's counsel within thirty (30) days after entry of this Final Judgment, pursuant to 15 U.S.C. § 1116, a report in writing under oath, setting forth in detail the manner and form in which Phat Cat has complied with the Summary Judgment Order (Doc. No. 82) and this Final Judgment.

8. Phat Cat and its owners, shareholders, officers, directors, employees, and successors are ordered to permit GM and/or representatives for GM, to audit and inspect the books and records of Defendant Phat Cat for a period of six months after entry of this Final Judgment to determine the scope of Phat Cat's compliance with the Summary Judgment Order (Doc. No. 82) and this Final Judgment.

9. Within thirty (30) days after entry of this Final Judgment, Phat Cat and its owners, shareholders, officers, directors, employees, and successors are ordered to disclose in detail to GM all banking and investment accounts, inventory, receivables, equipment, real property, and any other assets of any kind, as well as the locations of any such assets, including the address and location of the building and facility depicted in GM's Exhibits 4 and 5 at the hearing. Defendant is further ordered to disclose to GM any sales, transfers, gifts, or other dispositions of any and all assets by Phat Cat during the period between June 24, 2006 (the approximate date on which Phat Cat was served with the Complaint in this matter) through the date on which these disclosures are made. In making the disclosures required under the previous sentence, Phat Cat shall include the date of any transfers of assets, the identy(ies) of any persons and/or entities to whom such transfers of assets have been made, the amount and type of any funds or consideration received by Phat Cat in exchange for any transfers of assets, and copies of any agreements or documents memorializing or evidencing any such transfers of assets shall be supplied to GM as part of such disclosures.

10. Defense counsel, Bernard R. Mazaheri of Mazaheri & Gadd, is ordered to assist Phat Cat in complying with the disclosures and the inspection of Phat Cat's records, as described above in paragraphs 7, 8, and 9 of this Order.

11. In accordance with 15 U.S.C. § 1116, the Clerk of the Court shall notify the Commissioner of Patents and Trademarks of the entry of this Final Judgment and Order on Summary Judgment (Doc. No. 82) who shall enter it upon the records

of the United States of Patent and Trade-
mark Office.